494 P.2d 749

**James H. KEPNER and Shirley Kepner, husband and wife, and Walter James Kepner, a minor by and through his next friend James H. Kepner, Appellants,**

**v.**

**The WESTERN FIRE INSURANCE COMPANY, a Kansas corporation, Appellee.**

**No. 1 CA-CIV 1587.**

Court of Appeals of Arizona, Division 1.

March 15, 1972.

Rehearing Denied April 14, 1972.

Review Granted June 20, 1972.

Jack M. Anderson, John S. Schaper, Phoenix, for appellants.

Renaud, Cook, Miller & Cordova, by James M. Videan, Phoenix, for appellee.

KRUCKER, Chief Judge.

On February 28, 1966, Walter Kepner, then four years old, suffered a severe laceration of the skull and the brain from an open power saw. The injury occurred upon the premises of Harry and Velma Kepner, the child's grandparents, while Walter was being cared for by his grandmother, Velma Kepner, so that his father, James Kepner, could work in the grandfather's swimming pool service business. At the time of the injury the saw was being operated by an employee of Harry Kepner, Edward Jamison.

A complaint was filed by the child's parents in his behalf seeking to recover from Harry and Velma Kepner and Edward Jamison for the child's injuries.

At the time the injury occurred, two insurance policies were in effect covering the liability of Harry and Velma Kepner for injuries occurring upon the premises at 5733 North 7th Street. These policies were complementary, with one policy providing liability coverage for the business and the other liability coverage for the home. Appellee here, Western Fire Insurance Co., was notified of the claim but denied liability under its Homeowners policy and refused to defend. The other insurer, Globe Indemnity Co., undertook defense of the suit.

During the trial an agreement was reached between plaintiffs and Globe Indemnity Co. under which Globe paid plaintiffs $37,500 (their coverage limit) in return for a covenant by the plaintiffs that they would not execute against Globe's insured in the event of a judgment in excess of $37,500. After this agreement, the jury was dismissed and the trial completed to the court. A judgment was entered against the defendants for $52,000 on October 15, 1968.

Thereafter, a writ of garnishment was issued to Western seeking recovery of the difference between the amount paid by Globe Indemnity ($37,500) and the amount of the judgment ($52,000). Western's answer denied any indebtedness to the defendants. A tender of issue was then filed with the controverting affidavit and an answer filed by Western.

Mr. and Mrs. James Kepner moved for summary judgment that Western was liable

for the payment of the unsatisfied $14,500 of the judgment rendered against Harry and Velma Kepner. Western opposed the motion for the reason that an issue of material fact existed relative to the applicability of the special exclusions of the policy which was issued to Harry and Velma Kepner. The motion for summary judgment was denied.

A hearing was held before the Honorable Thomas Tang on the contested garnishment. The court entered a judgment for the garnishee-defendant on 22 July. On 28 September 1970 an amended judgment was entered in favor of the garnishee-defendant, which reflected the Findings of Fact and Conclusions of Law of 30 July as follows:

"1. That a homeowners policy was issued by the garnishee-defendant to HARRY and VELMAR KEPNER, which policy contained a declaration that no business pursuits were conducted on the premises insured, that being the residence of HARRY and VELMA KEPNER, 5733 North Seventh Street, Phoenix, Arizona.

2. That the aforementioned insurance policy provided coverage for personal liability under Section II thereof; however, the policy contained a specific exclusion providing: 'Section II of this policy does not apply: (a) (1) to any business pursuits of an insured, except under Coverage E and F, activities therein which are ordinary, incident to non-business pursuits' and further as to '(h) under Coverage F, to bodily injury to . . . (2) any person, on the premises because of a business conducted thereon, or is injured by an accident arising out of such business.'

3. That the accident in which the plaintiff JAMES KEPNER was injured occurred on the insured premises upon which a business pursuit, namely, Harry's Pool Service, was being conducted

and that the injury occurred in an accident arising out of such business." 

## CONCLUSIONS OF LAW

"1. That the special exclusion aforementioned contained in the homeowners insurance policy excluded coverage for the injury to JAMES KEPNER upon which the original action was founded.

2. That there is a distinction between the liability for tort as between the original defendants and plaintiffs and the indemnity liability of the garnishee-defendant.

3. That the doctrine of collateral estoppel does not preclude and foreclose the garnishee-defendant from showing or proving its defenses under the policy, and the facts necessary for this defense are not contrary to those necessary to establish tort liability.

4. That the defendant-garnishee is entitled to a judgment consistent with the conclusions reached herein and is entitled to his costs."

## DUTY TO DEFEND

The Arizona courts have frequently held that an insurance policy is a contract and that any liability arising therefrom must be based upon the provisions of the contract read in the light of controlling statutes. Dairyland Mutual Insurance Co. v. Andersen, 102 Ariz. 515, 433 P.2d 963 (1967); D.M.A.F.B. Federal Credit Union v. Employers Mutual Liability Insurance Co., 96 Ariz. 399, 396 P.2d 20 (1964); Navaho Freight Lines, Inc. v. Liberty Mutual Ins. Co., 12 Ariz.App. 424, 471 P.2d 309 (1970). Any ambiguity or doubt respecting the policy will be construed against the insurer and in favor of the insured. D.M.A.F.B. Federal Credit Union, supra; Paulin v. Fireman's Fund Insurance Co., 1 Ariz.App. 408, 403 P.2d 555 (1965). Under Section II of the Homeowners policy issued by Western to Harry B. and Velma

C. Kepner, the insureds are provided with $25,000 personal liability coverage by the following specific language:

"PROVISIONS APPLICABLE TO SECTION II

THIS COMPANY AGREES WITH THE NAMED INSURED:

1. COVERAGE E—PERSONAL LIABILITY:

(a) Liability: To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and *the Company shall defend any suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy,* even if any of the allegations of the suit are groundless, false or fraudulent; but the Company may make such investigation and settlement of any claim or suit as it deems expedient." (Emphasis added)

This is a general homeowners liability provision subject to certain specified exclusions, the pertinent parts of which follow:

"SPECIAL EXCLUSIONS

Section II of this Policy Does Not Apply: (a) (1) *to any business pursuits of an Insured,* except under Coverages E and F, activities therein which are ordinarily incident to non-business pursuits,

\* \* \* \* \* \*

(h) *under Coverage F, to bodily injury to (1) any Insured* included within parts (1) and (2) of the definition of 'insured' or (2) any person, other than a residence employee, if such person is regularly residing on the premises including any part rented to such person or to others, or is *on the premises because of a business conducted thereon,* or is *injured by an accident arising out of such business:"* (Emphasis added)

\* \* \* \* \* \*

We are satisfied that the allegations of plaintiffs' complaint brought the action within the coverage of Western's policy and that Western's refusal to defend when notified was based upon the fact known to the insurer but omitted from the allegations, that the injury occurred within the scope of a business operated by the insureds on these premises.

The duty of a liability insurer to defend actions brought against its insured was first discussed by this court in Paulin v. Fireman's Fund Insurance Co., 1 Ariz.App. 408, 403 P.2d 555 (1965). The general rule then existing in the United States regarding the obligation of a liability insurer to defend, was that the obligation to defend "is to be determined by the allegations of the complaint to be defended." Annot., 50 A.L.R.2d 458 (1956); 7A Appleman, Insurance Law and Practice, §§ 4683 and 4684 (1962); Annot., 45 C.J.S. Insurance § 933a at 1056 (1946). The court in *Paulin* was not, however, faced with the problem we have, since in *Paulin* neither the alleged or true facts were within the duty to defend clause.

In the frequently cited Lee v. Aetna Casualty and Surety Co., 178 F.2d 750 (2 Cir., 1949), the eminent jurist, Learned Hand, construed a "duty to defend" clause substantially similar to that before us, concluding:

"This language means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury 'covered' by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact 'covered.'" 178 F. 2d at 751.

Numerous other cases have held strictly to the policy language in looking no further than the "allegations of the complaint," but frequently with the presumption that no distinction existed between the facts alleged and the true facts. Where such a divergence has existed the results have not been uniform. Annot., 44 Am.

Jur.2d Insurance § 1540 (1969); Annot., 50 A.L.R.2d 458 at 497–504 (1956).

It is true that where a conflict exists between the allegations and the actual facts, the insurer, if he thinks the actual facts exclude coverage, has other alternatives than refusal to defend. The insurer may defend under a "non-waiver agreement"[1] or reservation of rights clause or seek a declaratory judgment to determine its liability.[2] But, are these safer alternatives mandatory or should it be the insurer's prerogative to refuse defense where it feels that coverage is excluded, and take its chances on the possible severe consequences should its failure to defend prove to be a breach of the contract?[3]

After careful consideration of the alternatives, we hold that the insurance company cannot refuse to defend because some fact outside the pleadings may be thought by it to exclude coverage. We base our conclusions upon the reasons expressed herein below.

The broadly-worded "Duty to Defend" clause here in issue appears in the contract of insurance drafted by the insurance company. The provisions of such a contract will be enforced by the courts unless some ambiguity exists and any ambiguity will be construed against the insurance company which drafts the contract. Reading the insurance contract before us in its entirety, we are unable to find any provision or exclusion which relieves the insurance company of its duty to defend when a complaint alleges bodily injury or property damage for which damages the insured would be legally obligated to pay under the policy. The company has obligated itself to defend in these broad circumstances and we think the insured is completely justified in expecting the company to meet its obligation.

As this court previously pointed out in *Paulin, supra,* the duty to defend and the duty to ultimately pay a judgment are two separate obligations. The insured pays his premium dollar to be relieved of both burdens and to the average insured, who has probably never been sued before, defense of a suit is not a duty to be taken lightly. That the company should assume defense is in the best interest of both parties. Since most large insurance companies have retained counsel, they can with minimal effort and expense investigate the circumstances and successfully defend the insureds if they were not negligent. Should the company, as it did here, discover a fact which it believes would exclude coverage, it can simply seek a declaratory judgment as in Navajo Freight Lines, Inc. v. Liberty Mutual Insurance Co., 12 Ariz.App. 424, 471 P.2d 309 (1970), and following a determination in its favor, be certain that it is relieved of both the obligation to defend and its obligation to indemnify. Following such a declaratory judgment, the insured party would be apprised that the suit was not within his insurance coverage and that he must furnish his own defense. Requiring the insurance company to bear this burden of defending under a reservation of

---

1. *Appleman,* supra, 7A § 4686 at 473 and § 4694 at 539.

2. Lawrence v. Burke, 6 Ariz.App. 228, 431 P.2d 302 (1967).

3. The unjustified refusal to defend may result in the insurer's liability for all damages incurred by the insured as a result of the refusal to defend, including the costs of defense and reasonable attorneys fees, up to the policy limits. Waite v. Aetna Casualty and Surety Company, 77 Wash.2d 850, 467 P.2d 847 (1970); Bosko v. Pitts & Still, Inc., 75 Wash.2d 856, 454 P.2d 229 (1969), or in some cases even beyond the policy limits, Prince v. Universal Underwriters Insurance Co., 143 N.W.2d 708 (N.D.1966); Comunale v. Traders & General Insurance Company, 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R. 2d 883 (1958). The *Comunale* court concluded that:
   "An insurer who denies coverage does so at its own risk, and, although its position may not have been entirely groundless, if the denial is found to be wrongful it is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract." 328 P.2d at 202.

rights clause or of seeking a declaratory judgment, offers some assurance that the insured will not be defaulted through either his own inadvertence or through the uncertainty of his status regarding his insurance carrier.

Reversed and remanded for proceedings consistent with this opinion.

HOWARD, and HATHAWAY, JJ., concur.

Note: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.