517 P.2d 1117

HARTFORD INSURANCE GROUP, a corporation, Appellant,

v.

ROYAL-GLOBE COMPANY, a corporation, Appellee.

No. 2 CA-CIV 1449.

Court of Appeals of Arizona, Division 2.

Jan. 10, 1974.

Rehearing Denied March 5, 1974.

Review Denied April 2, 1974.

Mesch, Marquez & Rothschild, P. C. by John K. Mesch and Tom R. Clark, Tucson, for appellant.

Lesher & Scruggs, P. C. by William E. Kimble, Tucson, for appellee.

## OPINION

HOWARD, Judge.

This was an action for declaratory relief wherein the appellant requested the trial court to determine the rights, duties and obligations of the appellee with respect to

a pending personal injury suit. The court decreed that appellee had no duty to defend or indemnify Stearns-Roger Corporation, a defendant in the personal injury action. This appeal followed.

Stearns-Roger Corporation, hereainafter referred to as Stearns-Roger, was the prime contractor on a job for Magma Copper Company at San Manuel, Arizona. Stearns-Roger entered into a written subcontract with Western Construction Company, hereinafter referred to as Western, for the erection of steel, roofing and siding. The sub-contract provided, *inter alia*:

## "9. INSURANCE AND INDEMNIFICATION:

9.1 Insurance. Subcontractor agrees to obtain and to keep in force during the term of this subcontract the below described insurance coverage relating to the work, with Owner and Prime Contractor as named insureds. Such insurance shall be carried with insurance companies satisfactory to Prime Contractor, and Subcontractor will furnish Prime Contractor with certificates evidencing such insurance coverage prior to commencing any work under this subcontract. Three copies of each certificate evidencing such coverage are to be mailed to party indicated in purchase order. The certificates must show the Prime Contractor's subcontract number so that Prime Contractor can identify the same by project. The insurance coverage which Subcontractor shall so obtain and keep in force is as follows:

a. Workmen's Compensation and/or Employer's Liability Insurance as required under the laws applicable to the work, which shall cover all of Subcontractor's employees engaged in the work.

b. Automobile Public Liability Insurance covering all automotive equipment used in connection with the work, with not less than $500,000/$1,000,000 bodily injury

and $600,000 property damage coverage.

c. Comprehensive Public Liability Insurance (includ-cluding [sic] contractual liability insurance covering the indemnification appearing in paragraph 9.3) covering work performed under this subcontract, with not less than $500,000/$1,000,000 bodily injury coverage and property damage insurance with limits of $500,000 as to any one occurrence.

9.2 Sub-subcontractor's Insurance. Subcontractor shall specifically require its Sub-Subcontractors to obtain like insurance coverage to that specified in paragraph 9.1 and, prior to commencing work, to submit certificates evidencing such insurance to Prime Contractor as provided in paragraph 9.1.

9.3 Indemnification. Subcontractor agrees to indemnify Owner and Prime Contractor against and hold Owner and Prime Contractor harmless from any and all claims, liabilities, obligations and causes of action of whatsoever kind or nature for injury to or death of any person (including Owner's and Prime Contractor's employees), and for damage to or destruction of property (including Owner's and Prime Contractor's property), resulting from any and all acts or omissions of Subcontractor, or of any Sub-Subcontractor's employees in connection with the performance of the work covered by this subcontract.

\* \* \* \* \* \*

## 11. ACCIDENT REPORTS AND SAFETY:

11.1 In case of accident on the project, an accident report must be prepared by Subcontractor and one copy thereof given to Prime Contractor's General Superintendent.

11.2 Safety equipment and safeguards suitable to the occupational hazards in-

volved and conforming to the safety regulations on the project must be furnished by the Subcontractor.

11.3 Subcontractor shall comply with all Federal, Provincial, State, local and Prime Contractor's orders, rules and regulations governing safety and the safe performance of the work.

11.4 The Subcontractor shall be directly responsible for its own safety program and first aid and medical service for its employees.

Where the Subcontractor utilizes the Prime Contractor's first aid services, the acceptance of this service shall in no way render the Prime Contractor or Owner liable for any damage, claim or expense which may arise out of or be incident to the use of such services.

11.5 The Subcontractor agrees to indemnify and hold harmless Owner and Prime Contractor from and against any and all claims, liabilities, obligations, and causes of action of whatsoever kind or nature as a result of the failure to comply with the above safety requirements.

11.6 Prime Contractor may shut down work if, in the opinion of the Prime Contractor or its safety engineer, the Subcontractor's work is being performed in a hazardous and dangerous manner. Work will not thereafter proceed until Subcontractor agrees to conduct the work in a safe manner. Subcontractor shall be entitled to no additional compensation or extension of time for performance of this contract in the event Prime Contractor has to shut down Subcontractor's work pursuant to this paragraph.

11.7 If the Prime Contractor furnishes a full-time safety engineer or a combination first aid man and safety engineer, his prime duties will be to look after the safety and first aid interests of the Prime Contractor and to enforce the project safety rules and regulations. His presence will not in any way detract from the Subcontrac-

tor's safety responsibility as outlined above.

11.8 Subcontractor shall specifically require its Subcontractors to comply with the provisions of this paragraph."

Western secured from appellee, hereinafter referred to as Royal-Globe, a policy of insurance. An endorsement to the policy provided:

"COVERAGES – CONTRACTUAL BODILY INJURY LIABILITY CONTRACTUAL PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured, by reason of contractual liability assumed by him under any written contract of the type designated in the schedule for this insurance, shall become legally obligated to pay as damages because of

bodily injury or

property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend

\*　　\*　　\*　　\*　　\*　　\*

Exclusions

This insurance does not apply: (a) to liability of the indemnitee resulting from his sole negligence;

\*　　\*　　\*　　\*　　\*　　\*"

On May 12, 1971, Wellington, an employee of Western was injured on the jobsite when a crane operated by another Western employee struck some planking causing it to fall and strike Wellington. Wellington filed a personal injury action in the Pima County Superior Court against Stearns-Roger alleging that Stearns-Roger's negligence in the operation, control

and safety precautions of the premises caused his injuries. Wellington did not sue Western, his employer, because of Western's immunity under the Workmen's Compensation Act.

Appellant, hereinafter referred to as Hartford, insured Stearns-Roger. It filed an answer in the Wellington suit on behalf of its insured, Stearns-Roger. It *apparently* has a provision in its policy similar to the one in the Royal-Globe policy requiring it to defend. We say *apparently* because the Hartford policy was never introduced into evidence in this action in the trial court. We assume that such must be the case since Hartford undertook Stearns-Roger's defense in the Wellington suit. Hartford made a demand upon Royal-Globe to assume the defense of the Wellington suit. When Royal-Globe refused, Hartford brought this action. Hartford also filed a motion for summary judgment in the Wellington case which was denied.

No oral testimony was taken by the trial court. The evidence consisted of a copy of the subcontract between Stearns-Roger and Western, a certificate of insurance issued by Royal-Globe at the request of Stearns-Roger, Hartford's Exhibit No. 2, referred to by the parties as the contract of insurance issued by Royal-Globe, and portions of the depositions of Wellington and John Buzard, a safety supervisor for Stearns-Roger.

The trial court also took judicial notice of the file in the case of Wellington v. Stearns-Roger. After submission of written memoranda to the trial court it held that Royal-Globe had no duty to defend or indemnify Stearns-Roger in the Wellington suit.

Hartford presents the following questions for review:

"A. Does appellee have a duty to defend and pay the expenses thus far incurred and extend coverage to the limits of its policy for the Wellington claim in that the prime contractor is a named insured and afforded general liability coverage?

B. Is the obligation of appellee determined only by the allegations of the formal complaint by Wellington or should the court focus on the true facts to determine the issues of coverage and responsibility under the contractual liability coverage?

C. Does appellee afford coverage and incur the duty to defend and pay defense expenses thus far incurred for the Wellington claim based upon the safety indemnification?"

## IS STEARNS–ROGER A NAMED INSURED?

■ Hartford contends that Stearns-Roger is a named insured in the Royal-Globe insurance policy by virtue of paragraph 9.1 of the indemnity agreement and the certificate of insurance issued by Royal-Globe.

Appellant's Exhibit No. 2 consists of several pages of endorsements to policy #RLU 57–26–98 together with work sheets and a document which contains nothing more than the name of the insurance company, the type of insurance coverage afforded, the name of the insured and the limits of liability. Neither policy #RLU 57–26–98 nor a facsimile was ever offered into evidence and does not appear anywhere in the record. The trial court had before it this series of endorsements, the indemnity agreement and the certificate of insurance. The certificate of insurance shows the named insured to be "Joseph Van Dyke", and indicated "DBA: Western Construction Co., et al."

An amended endorsement included Joseph Van Dyke, as an individual, Van Dyke's wife and other construction companies owned by Van Dyke. Stearns-Roger does not appear as a named insured either in the certificate of insurance or in any of the endorsements contained in Exhibit No. 2. If Stearns-Roger is an "insured" as opposed to a "named insured" under the policy, this does not appear in the record since the trial court was never provided with the policy which may include a definition of the word "insured". Royal-Globe never

contracted with Stearns-Roger to make it a named insured under the comprehensive liability provision of its policy. That obligation rested upon Western. Stearns-Roger is not an "insured" or a "named insured" under the comprehensive liability provisions of the Royal-Globe policy.

## THE CONTRACTUAL LIABILITY COVERAGE

The main issue below was whether under the allegations of the complaint in the Wellington case, Royal-Globe was obligated to defend. Royal-Globe relied on our case of Kepner v. Western Fire Insurance Company, 16 Ariz.App. 549, 494 P.2d 749 (1972) for the proposition that its duty to defend depended upon the allegations of the Wellington complaint. Hartford contended that the "true facts" showed that the accident was caused by employees of Western and that Royal-Globe was therefore obligated to defend.

The position that the "true facts" govern rather than the allegations of the complaint was sustained by the Supreme Court in Kepner v. Western Fire Insurance Company, 109 Ariz. 329, 509 P.2d 222 (1973). It should be pointed out that this case is not a *Kepner*-type situation. The insured, Stearns-Roger, is not a party to this action. The insured is not aking for a defense from Royal Globe. Rather, we have Hartford, who is under its own contractual duty to defend its insured, asking to be relieved of this responsibility.

It has been held that where there is a dispute as to which of two liability insurers is obligated to defend an action and it appears that one insurer, if its insured would be held liable, would be entitled to recover by subrogation from the other insurer, then the other insurer, as the one ultimately liable, should be obliged to defend in the first instance. Travelers Insurance Company v. General Casualty Company of Ameria, 187 F.Supp. 234 (D. Idaho 1960). An action for declaratory relief under such circumstances is proper to prevent multiplicity of suits. But that is not the situation of the case *sub judice*.

 Royal-Globe has no duty to defend Stearns-Roger unless it has assumed a contractual obligation to do so. We find nothing in the exhibits which imposes such a duty. Under its contractual liability endorsement quoted above, it agrees to defend "the insured". The exhibits do not disclose Stearns-Roger to be an insured under the policy. Therefore, Royal-Globe owes no duty to defend Stearns-Roger. Davis Constructors & Eng., Inc., v. Hartford Acc. & Ind. Co., 308 F.Supp. 792 (M. D.Ala.1968). Assuming arguendo that Stearns-Roger is an "insured" under the contractual liability provision, as between Hartford and Royal-Globe, Royal-Globe would have no duty to defend under the contractual liability clause. Under that clause Royal-Globe agreed to pay on behalf of Western [Stearns-Roger] all sums which Western [Stearns-Roger] *because of contractual obligations assumed by Western [Stearns-Roger] in the subcontract* is obliged to pay as *damages for bodily injury*. What contractual obligations were assumed by Western? It agreed to indemnify and hold Stearns-Roger harmless from all claims, liabilities, obligations or causes of action resulting from any acts or omission of Western or its employees in the performance of the work covered by the subcontract and to indemnify and hold Stearns-Roger harmless from any and all claims, liabilities, obligations and causes of action resulting from failure to comply with safety requirements.

Western also agreed to furnish the insurance set forth in paragraph 9.1 of the subcontract. However, any damages recovered against Stearns-Roger in that suit are not sums which Stearns-Roger has to pay to Wellington by reason of Stearns-Roger's contractual obligation. In fact, as far as this case is concerned, Stearns-Roger did not assume any contractual obligation.

 The suit by Wellington against Stearns-Roger is based upon the independ-

ent negligence of Stearns-Roger. Hartford contends that since paragraphs 9.3 and 11.5 of the subcontract require indemnification and the true facts show that Western was negligent any judgment against Stearns-Roger would have to be paid by Royal-Globe and thus Royal-Globe should defend rather than Hartford. We do not agree. The indemnification agreements are not operable if the injuries to Wellington are the result of the concurrent negligence of Western and Stearns-Roger. Southern Pacific Company v. Gila River Ranch, Inc., 105 Ariz. 107, 460 P.2d 1 (1969). See also, Annot. 175 A.L.R. 8, p. 34 et seq. Thus the rule in Travelers Insurance Company v. General Casualty Company of America, supra, does not apply.

There is another reason why Hartford should not be allowed to shift its duty to defend to Royal-Globe. Stearns-Roger, whose interest is at stake, was not made a party to this action. If Royal-Globe were to be required to defend Stearns-Roger, there would be a very serious conflict of interest. It would be in the best interest of Royal-Globe to sit back and let the trier of fact find Stearns-Roger negligent. An insurer should not be required to defend in such a situation. Glens Falls Insurance Co. v. American Oil Co., 254 Md. 120, 254 A.2d 658 (1969). The Arizona Supreme Court in Kepner v. Western Fire Insurance Company, supra, stated that when a coverage conflict develops there must be a proceeding at which the insured and the insurer each represented by counsel of their own choice, fight out their differences. The *Kepner* opinion indicates this might be accomplished by a declaratory judgment action in advance of the third party's action or in garnishment proceedings following a trial. Stearns-Roger is neither a party nor represented by independent counsel in this lawsuit. Furthermore, a declaration in advance is singularly inappropriate since coverage depends upon the issue of Stearns-Roger's negligence which has yet to be determined by the trier of fact.

There are two other points that need comment. First, the exclusion for "sole negligence" of the indemnitee under the contractual liability endorsement does not *create* coverage. The exclusion is not in conflict with the coverage clause. It means nothing in this case since the contractual liability covered by the policy is not applicable if Stearns-Roger is guilty of concurrent negligence.

Secondly, the trial court went too far in holding that Royal-Globe need not indemnify Hartford. Should there be a defense verdict in the Wellington case the indemnity clause of the subcontract may apply and Royal-Globe may have to pay for costs and the defense of the suit. Howard P. Foley Co. v. Employers-Commercial Union, 15 Ariz.App. 350, 488 P.2d 987 (1971).

The judgment of the trial court is modified by vacating that portion of the judgment stating that Royal-Globe has no duty to indemnify Hartford.

The judgment is otherwise affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.