571 P.2d 1050

The **ANACONDA COMPANY, a Montana Corporation, Appellant,**

v.

**CHAPMAN–DYER STEEL MANUFACTURING COMPANY, Appellee.**

No. 2 CA–CIV 2421.

Court of Appeals of Arizona, Division 2.

Sept. 26, 1977.

Rehearing Denied Nov. 7, 1977.

OPINION

HOWARD, Chief Judge.

This appeal arises out of a superior court declaratory judgment action by Anaconda against Chapman-Dyer to obtain a declaration in its favor that Chapman-Dyer was required to indemnify Anaconda, pursuant to a written agreement between them, for losses sustained by Anaconda in defending and settling a personal injury action and in defending a wrongful death action. The case was tried to the court resulting in judgment in Chapman-Dyer's favor.

The court made findings of fact and conclusions of law and concluded: (1) that the indemnity agreement was not retroactive and did not obligate Chapman-Dyer to indemnify Anaconda for any claims, liabilities or expenses arising out of accidents occurring prior to the execution and delivery of the agreement, but only for those arising out of accidents occurring after the execution and delivery of the agreement; and (2) Chapman-Dyer was not obligated to indemnify Anaconda for claims, liabilities or expenses arising out of the latter's negligence or alleged negligence, because the agreement did not contain an express stipulation to that effect and that such intention was not expressed in clear and unequivocal terms. (The court noted that it was immaterial whether or not the accident was caused by Anaconda's sole negligence.)

Anaconda is in the business of running a copper mine in Pima County, and Chapman-Dyer is primarily a steel fabricator. During a period of time in which Chapman-Dyer was doing work for Anaconda as an independent contractor, one Brierley was killed and one McKeeby was injured, both of whom were Chapman-Dyer's employees. Separate lawsuits were filed on their behalf against Anaconda. The Brierley suit resulted in a defense verdict and the McKeeby suit was settled by Anaconda. The trial transcripts of the *Brierley v. Anaconda* trial were admitted into evidence in the instant case. In summary, some of the facts may be found in *Brierley v. Anaconda Company,*

Chandler, Tullar, Udall & Redhair by Jack Redhair and Robert E. Lundquist & D. B. Udall, Tucson, for appellant.

Fish, Briney, Duffield & Miller, P. C. by Richard Duffield, Tucson, for appellee.

111 Ariz. 8, 522 P.2d 1085 (1974). The opinion indicates that the alleged negligence against Anaconda was (1) Anaconda was negligent in operating its conveyor belt while men were working near or over the belt when Anaconda knew or should have known that they would be working over the belt, and (2) Anaconda was negligent in not discovering and repairing a broken pull-cord. (The conveyor contained a safety device consisting of a cable running horizontal and parallel to the conveyor belt which, when pulled, stopped the conveyor. This pull-cord had been released from its support at one end and either tied back or thrown back so it was not operable.)

At the trial in the instant case, Anaconda called as a witness the attorney who represented Brierley in the wrongful death litigation:

"Q. Did you in the course of your discovery ever reach an opinion as to whether or not in the presence of a jury you would be successful in proving negligence or otherwise proving the negligence of Anaconda in that trial?

A. Yes, I did.

Q. And prior to trial what were your conclusions concerning the exposure, the probability, if you please, of convincing a jury in your opinion of the responsibility of Anaconda?

A. Nine out of ten.

Q. Did you evaluate the case of the deceased person who was involved in the accident, did you evaluate whether or not Chapman-Dyer through its employees were also negligent?

A. Yes, I did.

Q. What was your conclusion on that point?

A. I thought I had a fifty-fifty chance on the contributory negligence.

Q. Was your opinion based upon the fact that sympathy would play a part in front of the jury and you had a dead person and a widow?

A. Yes, that is always consideration.

Q. So the fifty-fifty wasn't entirely based upon the facts of what occurred, it was based in part on sympathy?

A. That's correct."

This testimony and the Brierley trial transcript was the only evidence presented by Anaconda pertaining to its negligence or absence thereof.

The major portion of the evidence was devoted to the issue of whether the indemnity agreement, executed after the accident occurred, was intended by the parties to apply. This evidence consisted of the following. The work to be performed by Chapman-Dyer commenced in late December 1970. The accident occurred on January 22, 1971, and on January 29, 1971, the insurance and indemnity agreement, dated January 29, 1971, was mailed to Chapman-Dyer and was signed by its secretary-treasurer on February 2, 1971. The agreement contained no provision reciting that it was effective as of the date Chapman-Dyer commenced work in December 1970. The agreement did provide that Chapman-Dyer would be qualified under Workmen's Compensation Law "before commencing work," and that it would provide and keep in force designated insurance coverage until completion of the work, and that certificates of insurance were to be deposited with Anaconda "prior to commencement of the work."

The subject indemnity agreement recites:

"(c) Contractor agrees to and does hereby indemnify Owner and save Owner harmless against and from

(1) any and all claims and liabilities, including costs and expenses, for bodily injury to, or death of, persons (including claims and liabilities for care or loss of services in connection with any bodily injury or death),

(2) any and all claims and liabilities including costs and expenses, for loss or destruction of or damage to any property belonging to Contractor or others (including claims or liabilities for loss of use of any property), and

(3) loss (including loss of use) or destruction of or damage to (A) materials, supplies, equipment and other property necessary for the work or (B) any proper-

ty of Owner, resulting directly or indirectly from, or occurring in the course of, Contractor's performance of the work; provided, however, that such indemnity shall not extend to (i) claims and liabilities for injury or death to persons who are not employees of Contractor resulting from Owner's sole negligence or willful misconduct or (ii) loss, destruction or damage (including claims and liabilities therefor) resulting from Owner's sole negligence or willful misconduct."

Thus we see that although the insurance and indemnity agreement was dated after the accident occurred, there are references in the agreement to the work performed by Chapman-Dyer which in fact had commenced prior to the accident. Where, as here, the parties' intention cannot be determined within the four corners of the agreement, there is an ambiguity. *University Realty & Development Co. v. Omid-Gaf, Inc.*, 19 Ariz.App. 488, 508 P.2d 747 (1973). Consequently, parol evidence was admissible to clarify the ambiguity. *7–G Ranching Co. v. Stites*, 4 Ariz.App. 228, 419 P.2d 358 (1966). The record discloses evidence which supports the trial court's conclusion that the parties' intention was that the indemnity agreement was not to apply to the accident which occurred prior to the execution of the agreement. We therefore find no error in this conclusion.

Assuming arguendo, however, that the parties' intention was otherwise, the trial court was correct in its conclusion that Chapman-Dyer was not obligated to indemnify Anaconda.

The law is well settled in this state that unless an indemnity contract expresses in clear and unequivocal terms the intention of the indemnitor to indemnify for losses caused by the indemnitee's own negligence, there is no contractual right of indemnity. *Southern Pacific Company v. Gila River Ranch, Inc.*, 105 Ariz. 107, 460 P.2d 1 (1969); *Allison Steel Manufacturing Company v. Superior Court*, 22 Ariz.App. 76, 523 P.2d 803 (1974); *Barnes v. Lopez*, 25 Ariz.App. 477, 544 P.2d 694 (1976); *Royal Properties, Inc. v. Arizona Title Insurance & Trust Company*, 13 Ariz.App. 376, 476 P.2d 897 (1971). Appellant, however, argues that this principle is satisfied in the instant case because the indemnity provision specifically excludes from its operation injuries to third persons caused by Anaconda's sole negligence or willful misconduct. Therefore, it is contended that by such exclusion the parties by implication intended that Chapman-Dyer indemnify Anaconda in situations where its concurrent negligence caused injury to Chapman-Dyer's employees during performance of the work on Anaconda's premises.

We agree with the trial court that the indemnity agreement failed to meet the stringent standard required in this jurisdiction, i. e., the intention to compensate the indemnitee for its own negligence must be expressed in "clear and unequivocal terms." Anaconda, not Chapman-Dyer, drafted the printed form of agreement upon which Anaconda relies. Nothing prevented Anaconda from spelling out in the agreement that the indemnitor would be required to indemnify it regardless of responsibility for negligence.

Appellant contends that if this court agrees with the trial court's interpretation of the indemnity agreement, a new trial is required to determine whether Anaconda was solely negligent, whether Chapman-Dyer was solely negligent, or whether the concurrent negligence of the parties caused the accident, with instructions that Anaconda would be entitled to indemnity if Chapman-Dyer was negligent, either solely or concurrently. This argument is without merit. First of all, if the concurrent negligence of Anaconda and Chapman-Dyer caused the accident, the indemnification agreement was not operable. *Hartford Insurance Group v. Royal-Globe Company*, 21 Ariz.App. 224, 517 P.2d 1117 (1974). Secondly, Anaconda had the burden of proving that the damages were not occasioned by its fault but rather by the negligence of Chapman-Dyer. *Sammer v. Ball*, 12 Cal.App.3d 607, 91 Cal.Rptr. 121 (1970); *Hack Investment Company v. Concrete Wall Company*, 356 Mich. 416, 97 N.W.2d

106 (1959); *Sleeman v. Chesapeake & Ohio Railroad Company*, 290 F.Supp. 830 (W.D. Mich.S.D.1968); *McCullough v. John B. Varick Company*, 90 N.H. 409, 10 A.2d 245 (N.H.1939); 42 C.J.S. Indemnity § 35(a). Anaconda did not meet this burden and therefore did not establish its contractual right of indemnity.

Affirmed.

HATHAWAY, and JACOBSON, JJ., concurring.