471 P.2d 309

NAVAJO FREIGHT LINES, INC., a corporation, and James R. Masters and Lola K. Masters, his wife, et al., Appellants,

v.

LIBERTY MUTUAL INSURANCE CO., a corporation, Appellee.

No. 1 CA–CIV 1038.

Court of Appeals of Arizona, Division 1, Department B.

June 22, 1970.

Rehearing Denied July 30, 1970.

Review Denied Oct. 20, 1970.

Dushoff, Sacks & Corcoran, by Seymour Sacks, and Stephen L. Weiss, Phoenix, for appellants.

Gust, Rosenfeld & Divelbess, by Richard A. Segal, Phoenix, for appellee.

HAIRE, Judge.

On this appeal the appellants seek to impose liability upon the appellee insurer for damages caused by a negligent driver alleged to be an omnibus insured under a policy issued by the appellee. The trial court found that the negligent driver, LeRoy Vann, was not at the time of the accident driving the vehicle with the named insured's permission, and therefore was not an omnibus insured.

In the trial court appellee sought a declaratory judgment to the effect that Vann was not an omnibus insured and that there-

fore appellee was neither obliged to defend Vann nor to pay any judgments rendered against him arising out of the accident. Appellants counterclaimed, seeking judgment against the insurer for their claimed damages as established by judgments obtained in other actions against Vann. One of the appellants had also filed a separate action against appellee seeking to recover the amount of its judgment against Vann. This latter action was consolidated with the declaratory judgment action for trial.

The court, after finding that Vann was driving the vehicle without the named insured's permission at the time of the accident and was therefore not insured by appellee, entered judgment in favor of the appellee holding that it was not obligated to defend Vann nor to pay any judgments against him arising out of the accident.

Appellants have appealed from the final judgment, from the trial court's denial of their motion to amend its findings of fact, and from the trial court's denial of their motion for summary judgment on their counterclaims.

Appellants' first contention is that the trial court erred in its factual findings that the named insured, Cline " * * * directed a New Mexico police officer to impound the car and to keep Vann from driving it * * * ", that "[i]t was Cline's intention to deny Vann the use of the car * * * ", and that "[a]t the time of the accident Vann was operating the car without the permission of Cline." The foregoing factual findings were made by the trial court pursuant to a request therefor under Rule 52(a), Rules of Civil Procedure, 16 A.R.S.

█ It is clearly the law of this state that findings of fact made pursuant to Rule 52(a), *supra*, which are supported by substantial evidence will not be upset, altered or reversed on appeal. Hunsaker v. Smith, 1 Ariz.App. 51, 399 P.2d 185 (1965); City of Phoenix v. Burke, 9 Ariz. App. 395, 452 P.2d 722 (1969); Ashton Co. v. State, 9 Ariz.App. 564, 454 P.2d 1004 (1969).

The foregoing general rule notwithstanding, appellants argue that the findings of fact made by the trial court are entitled to less weight on this appeal than they are usually accorded since, as shown in its memorandum opinion, the trial court based those findings of fact and its final judgment solely upon written depositions and a copy of the insurance policy involved.

█ Appellants assert that where there is no oral testimony before the trial court, it has no opportunity to judge the credibility of the witnesses insofar as that credibility is based upon the witnesses' demeanor. Thus, appellants reason, the appellate court has as good an opportunity to judge the credibility of the witnesses as had the trial court where depositions constitute the only "testimony", and where that is the case, this Court may disregard the mandate of Rule 52(a) that " * * * due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." The logic of this argument cannot be denied, but we are unable to take the additional step necessary to reach appellants' ultimate argument that we can, because of the foregoing, make our own *de novo* findings of fact and disregard the traditional function of the trial court as the fact-finding forum. We do not believe that the provision requiring the appellate court to give due regard to the opportunity of the trial court to judge the credibility of witnesses was intended as a limitation on the principal mandate of Rule 52(a) that "[f]indings of fact shall not be set aside unless clearly erroneous". Rather, we believe that this provision was intended to emphasize that where oral testimony is involved, the appellate court should be *especially* reluctant in arriving at a "clearly erroneous" reversal of the trial court's findings of fact. In our opinion the correct rule is that, irrespective of the nature of the evidence or the basis of the factual finding, an appellate court may set aside a Rule 52(a) finding of fact only if it is convinced that the finding is clearly erroneous. However, if as is usually the case,

the trial of the action involves live oral testimony and the trial court has an opportunity to consider the demeanor of the witnesses in determining their credibility, an appellate court should be *even more* reluctant to set aside the trial court's factual findings. The foregoing rules are required

"* * * by the essential nature of trial courts as distinguished from appellate courts. Even in instances where an appellate court is in as good a position to decide as the trial court, it should not disregard the trial court's finding, for to do so impairs confidence in the trial courts and multiplies appeals with attendant expense and delay." 2B Barron & Holtzoff, Federal Practice and Procedure § 1132 at 523-24 (Rules ed., Wright rev. 1961).

And, as said in Lundgren v. Freeman, 307 F.2d 104, 114 (9th Cir. 1962):

"Rule 52(a) * * * should not be construed to encourage appeals that are based on the hope that the appellate court will second-guess the trial court. * * * *Rule 52(a) explicitly clearly applies where the trial court has not had an opportunity to judge of the credibility of witnesses.*" (Emphasis added).

■ Giving full weight to the trial court's Rule 52(a) factual findings, we find them supported by substantial evidence and do not consider them clearly erroneous.

In addition to attacking the sufficiency of the evidence to support the findings made by the trial court, the appellants urge that even if Vann was not driving the vehicle with the consent of the named insured, appellee still had a duty to defend him, and because of its failure to do so appellee is now estopped to assert non-liability for the resulting judgments against Vann. As to this latter contention, it is appellants' position that the question of whether a party is or is not an insured must be determined solely from the allegations of the complaint filed in the damage action, and that if the complaint contains an allegation that the defendant was driving with permission of the named insured, the insurer owes a duty to defend that defendant, notwithstanding what the true facts might be. While the appellee insurer denies that this contention is legally correct, it urges that even if it were correct, the issue was not properly presented and preserved in the trial court, and therefore cannot now be raised on appeal. Robinson v. Lintz, 101 Ariz. 448, 420 P.2d 923 (1966); Milam v. Milam, 101 Ariz. 323, 419 P.2d 502 (1966).

■ The pretrial order defining the issues of fact and legal issues does not make reference to any issue resembling the above contention, and at the trial no evidence was submitted concerning any question of estoppel. Further, it is clear from the trial court's memorandum opinion and order that the trial court did not consider this issue nor was it raised in the motion filed by appellant after the trial. However, appellants point out that prior to the consolidation of these cases, the issue was raised by their motion for summary judgment which was denied. Of course, the denial of a motion for summary judgment is not an appealable order and appellants concede as much. See Fernandez v. Garza, 93 Ariz. 318, 380 P.2d 778 (1963); Renck v. Superior Court, 66 Ariz. 320, 187 P.2d 656 (1947); Burke v. Gottfried, 7 Ariz.App. 96, 436 P.2d 488 (1968). Appellants assert, however, that even though an order denying a motion for summary judgment might not be appealable, such an order may be reviewed as part of an appeal from the final judgment later entered in the matter.

■ There do not appear to be nay prior Arizona decisions directly considering this latter contention. The federal courts are firmly committed to the view that not only is the denial of a motion for summary judgment not appealable, Switzerland Cheese Association, Inc. v. E. Horne's Market, Inc., 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966), but, in addition, such denial is not even reviewable in connection with a proper appeal from some later ap-

pealable order or judgment. Drittel v. Friedman, 154 F.2d 653 (2d Cir. 1946); Dutton v. Cities Service Defense Corp., 197 F.2d 458 (8th Cir. 1952); John Hancock Mut. Life Ins. Co. v. Kraft, 200 F.2d 952 (2d Cir. 1953); 6 Moore's Federal Practice § 56.27 [1], n. 3 at 2971 (1965). Many states appear to have adopted this view. See Annot., 15 A.L.R.3d 899, 922-25 (1967).

To support their argument for a contrary rule in Arizona, appellants cite A.R. S. § 12-2102 which, in dealing with the scope of appellate review, reads in part as follows:

"A. Upon an appeal from a final judgment, the supreme court shall review *any intermediate orders involving the merits of the action and necessarily affecting the judgment,* and all orders and rulings assigned as error, whether a motion for new trial was made or not." (Emphasis added).

While an order denying a motion for summary judgment is undoubtedly an "intermediate order", we do not believe that such order "* * * [involves] the merits of the action and necessarily [affects] the judgment * * *." As stated in Switzerland Cheese Association, Inc. v. E. Horne's Market, Inc., *supra,* an order denying a motion for summary judgment is strictly a pretrial order that decides only one thing—that the case should go to trial. The Arizona Supreme Court in Kemble v. Porter, 88 Ariz. 417, 357 P.2d 155 (1960), while considering the appealability of an order denying the appellants' motion to vacate and set aside an execution sale, correctly summarized the essential nature of the denial of a motion for summary judgment, stating:

"The denial of the motion was in many important respects like the denial of a motion for summary judgment; *it did not adjudicate substantial rights, but merely postponed an adjudication until after a trial on the merits."* (Emphasis added). (88 Ariz. at 420, 357 P.2d at 157).

If it were abundantly clear from the trial court's order denying the motion for summary judgment that the denial was made strictly on a point of law, and that because of such ruling the losing party thereafter was precluded from offering evidence or urging the point at the time of the trial on the merits, then there might be some logic in appellants' position. See Gumm v. Combs, 302 S.W.2d 616 (Ky.App.1957). However, here we have no such indication that such was the case. There is nothing in the record to indicate that the trial court's denial of the motion for summary judgment precluded appellants from raising the issue of estoppel at the time of the pretrial hearing and trial. If such had been done both parties would have had an opportunity to introduce evidence and the trial court could have ruled thereon.

■ In our opinion an order denying a motion for summary judgment is properly considered as one of those intermediate orders which by their nature do not involve the merits and necessarily affect the final judgment. Rather, the entry of such an order merely indicates that the trial court considers that the matter should proceed to trial on the merits. To hold otherwise could lead to the absurd result that one who has sustained his position after a full trial and a more complete presentation of the evidence might nevertheless be reversed on appeal because he had failed to prove his case fully at the time of the hearing of the motion for summary judgment. Home Indemnity Co. v. Reynolds & Co., 38 Ill.App.2d 358, 187 N.E.2d 274 (1962); Bell v. Harmon, 284 S.W.2d 812 (Ky.App.1955).

The cases cited by appellant to the contrary are not persuasive. In Brown v. Midland National Bank, 150 Mont. 422, 435 P.2d 878 (1967), while the court talked in terms of reviewing the denial of defendant's motion for summary judgment, the issue on appeal involved strictly a question of law, adequately preserved in the pretrial order, as to whether there was a fatal variance between the claim presented in plain-

tiff's complaint and that previously presented to the defendant executor as a creditor's claim in a probate proceeding. The off-hand remarks of the court in Haldane v. Haldane, 216 Cal.App.2d 12, 30 Cal.Rptr. 793 (1963), were clearly dicta, made when the court entered an order dismissing a purported appeal from an order denying a motion for summary judgment.

■ However, we need not base our opinion on the premise that appellants' estoppel contention is not properly before us. In our opinion appellants cannot prevail on the merits of that issue. We find nothing in the insurance policy or in our statutes which would require or justify the result which appellants urge. The pertinent policy provision relating to the duty to defend reads as follows:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, arising out of the ownership, maintenance or use of an owned automobile or a non-owned automobile, and the company *shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent*; but the company may make such investigation and settlement of any claim or suit as it deems expedient." (Emphasis added).

We have not been cited to, nor has our research revealed, any statutory provisions which purport to enlarge the duty of the insurer to defend over and beyond the obligation set forth in the above-quoted policy provision. The latter part of this defense provision requires the insurer to "* * * defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent * * *." To whom is this duty to defend

owed? A reading of the entire provision shows that such duty is owed to the "insured". As defined in the policy, the term "insured" includes in addition to the named insured, " * * * any other person using such automobile with the permission of the named insured * * *." Here, Vann was not the named insured, and the trial court found as a fact that Vann was not using the vehicle with the permission of the named insured. Therefore, it would appear that the insurer had no contractual obligation to defend Vann because he was not an "insured", either named, omnibus or otherwise, under the policy.

There is no validity in appellants' contention that because they alleged in their complaint that Vann was using the vehicle with the permission of the named insured, that this alone created an obligation to defend Vann even though Vann was not in fact a person to whom the insurer owed any duty whatsoever under its contractual undertaking. This contention of appellants results from erroneous reliance upon a general principle established by many cases dealing with and interpreting contractual provisions in insurance policies imposing a duty on the insurer to defend its insured under certain circumstances. The principle developed in these cases is well summarized in Annot., 50 A.L.R.2d 461 at 463 (1956) as follows:

"Most liability insurance policies contain a provision obligating the insurer to defend the insured against all actions brought against him on the allegation of facts and circumstances which are covered by the policy, even though such suits are groundless, false, or fraudulent.

"It is generally recognized that under such a policy provision, the obligation of a liability insurer to defend an action brought against the insured by the third party is to be determined by the allegations of the complaint in the action. Taking the allegations of the complaint as their basis, the courts have adopted the following tests for determining the

merits of the claim that in an individual case the insurer is obligated to defend: If the complaint in the action brought against the insured upon its face alleges facts which come within the coverage of the liability policy, the insurer is obligated to assume the defense of the action, but if the alleged facts fail to bring the case within the policy coverage, the insurer is free of such obligation. Stated differently, the insurer is under an obligation to defend only if it would be held bound to indemnify the insured in case the injured person prevailed upon the allegations of his complaint. The above general rules and principles have been stated by the courts of various jurisdictions in more or less the same language, and all existing differences are more in the nature of variations in phraseology than in substance." (Footnotes omitted).

In all of the cases considered in this annotation no question was raised or involved as to the existence of the underlying relationship of insurer and insured—in other words, these cases assumed an insurer-insured relationship and then dealt with the extent of the insurer's duty to defend the insured under its contract as embodied in the policy. Since these contractual provisions generally impose an obligation to defend against any suit alleging the occurrence of risks insured against even if the suit is groundless, false or fraudulent, the courts have correctly held that by the use of such language in the policy, the insurer has imposed upon itself a contractual duty to defend its insured against suits alleging facts, which if proven, would constitute a risk insured against under the provisions of the policy. However, these contractual provisions do not purport to obligate the insurer to defend a complete stranger to the contract. A *sine qua non* to the existence of any obligation to defend, or pay, whether the suit be groundless or otherwise, is the pre-existing relationship of insurer-insured. The creation of this basic relationship cannot be left to the imagination of the drafter of a complaint.

In the case of Butler v. Maryland Casualty Co., 147 F.Supp. 391 (D.C.1956), the court recognized the general principle that the insurer's obligation to provide a defense is ordinarily determined by the allegations of the complaint even though these allegations are groundless. The court then stated:

"But before that principle applies, it must be shown that the defendant in the personal injury action is in fact an assured, named or omnibus, under the policy. Obviously, the insurer's obligation is not to provide a defense for a stranger merely because the plaintiff alleges that the strange defendant is an assured or alleges facts which, if true, would make him so. Conversely, the insurer may not renege on its obligation to provide a defense, even for an omnibus insured, merely because the allegations in the complaint are groundless. For example, where a person is driving the named insured's car with his permission, the permittee is an omnibus assured under the policy and the insurer owes him a defense when sued even though the charge of negligence against him cannot be proved. On the other hand, if permission was not granted for the use of the car, the user thereof is not entitled to a defense under the policy irrespective of proof of negligence. In short, allegations in the plaintiff's petition cannot create an obligation on the part of the insurer to defend where none previously existed." (147 F.Supp. at 395)

The sound reasoning and holding of the federal court in Butler was adopted in the later case of Smith v. Insurance Co. of Pennsylvania, 161 So.2d 903 (La.App.1964), wherein the court further stated:

"The rationale of the rule recognizes the obligation of the insurer to defend the insured against even a groundless claim, but before the rule may be applied it must be shown the defendant is in fact an insured, named or omnibus, under the policy. This must be so because the in-

surer is not obligated to provide a defense for a stranger merely because the plaintiff alleges the defendant is an insured or alleges facts, which, if true, would make defendant an insured. Just as the insurer may not decline the defense of an insured against a groundless claim, the insurer may not be compelled to defend an action against a party not entitled thereto under the policy provisions. Stated otherwise, the mere allegations of the plaintiff's petition may not create on obligation on the part of the insurer to defend where no such obligation previously existed." (161 So.2d at 919).

■ The Arizona courts have in many instances held that an insurance policy is a contract, and that liability, if any, must be based upon the terms of that contract read in the light of any controlling statutes. D.M.A.F.B. Federal Credit Union v. Employers Mutual Liability Insurance Co., 96 Ariz. 399, 396 P.2d 20 (1964); Dairyland Mutual Insurance Co. v. Andersen, 102 Ariz. 515, 433 P.2d 963 (1967). There is no contention made in the present case that any statutory provisions are here involved which enlarge the insurer's duty to defend. Therefore the insurer's liability must be based upon the language used in its policy. While that language would fully justify a court in finding that it was the intent of the parties that the insurer have a duty *to its insured* to defend all suits against *him* for injuries which appear from the allegations of the complaint to be within the ambit of policy coverage, there is no language used in the policy which would justify a conclusion that it was intended that such allegations be of any controlling influence in determining who is, or is not, an insured within the definition contained in the policy. After all is said and done, the simple fact remains that if Vann was using the vehicle with the owner's permission, the insurer has contracted to defend him. If in fact he was not using the vehicle with the owner's permission, then he is a stranger and the insurer has not contracted either

to defend him, or to pay any damages which might be assessed against him.

Holland American Insurance Co. v. National Indemnity Co., Wash., 454 P.2d 383 (1969), a case which involved a controversy between a primary and secondary or excess insurer, came to a conclusion contrary to that which we reach herein. Without any real analysis of the policy language, the court held that the allegations of the complaint governed and that based upon those allegations the insurer had a duty to defend an alleged omnibus insured even though the insurer had reason to believe that said alleged insured was not using the vehicle with the owner's permission. The Washington court appears to be primarily persuaded by its feeling that the preferable "* * * test for determining the duty to defend is one which can be applied at the time the complaint is filed." 454 P.2d at 385. While as a broad social policy matter the test proposed by the Washington court might be desirable, in the absence of statutes defining such a policy it is the opinion of this court that the only test which can be applied to determine the obligation of parties to an insurance contract is the language of that contract. We do not find the reasoning of the Washington court persuasive. If an insurer erroneously takes the position that notwithstanding the allegations of the complaint it has no obligation to defend, and facts subsequently establish that such duty did exist, then we are confident that the law will allow the injured party an adequate remedy for the breach by the insurer of its obligations under the policy. (See the many cases affording such a remedy cited in Annot., 50 A.L.R.2d 461 (1956)). On the other hand, if the insurer's position is ultimately shown to be correct, then it should not be penalized by being forced to bear an expense which it did not contractually obligate itself to incur.

We therefore hold that under the facts of this case the insurer was not obligated to defend the alleged omnibus insured Vann. Having reached this decision, we

**432**

do not deem it necessary to consider the many other questions which emanate from appellants' estoppel contention.

The judgment of the trial court is affirmed.

EUBANK, P. J., and JACOBSON, J., concur.