**FEIGER, COLLISON & KILLMER, a law partnership, Petitioner/Cross–Respondent,**

v.

**George JONES, Respondent/Cross–Petitioner.**

**No. 95SC150.**

Supreme Court of Colorado, En Banc.

Nov. 12, 1996.

Rehearing Denied Dec. 9, 1996.

---

Kennedy & Christopher, P.C., Elizabeth A. Starrs, Ronald H. Nemirow, John R. Mann, Denver, for Petitioner/Cross–Respondent.

Graham & James LLP, Rodney R. Patula, San Francisco, CA, Roberts & Zboyan, P.C., Ricardo M. Barrera, John B. Grow, III, Denver, Irvin M. Kent, Aurora, for Respondent/Cross–Petitioner.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari in *Jones v. Feiger, Collison & Killmer,* 903 P.2d 27 (Colo.App. 1994), to review the court of appeals' reversal of the jury verdict in that case. Because we hold that the court of appeals cannot review an order of the trial court denying summary judgment, we reverse and remand the case to the court of appeals for return to the trial court with instructions to reinstate the jury verdict.

## I.

George Jones (Jones), the respondent/cross-petitioner, was employed by a large investment company as an executive with the title of Senior Vice President until he was terminated by his employer in July of 1990. In October 1990, Jones retained the law firm of Feiger, Collison & Killmer (Feiger), the petitioner/cross-respondent, to represent him in an action against his former employer for wrongful discharge (the underlying action). Jones believed that the discharge was precipitated by his expressed concerns that certain instructions he was receiving from his superior in New York were illegal. The parties entered into a representation agreement which mixed elements of a contingent fee agreement and straight hourly compensation at a reduced rate.

With respect to settlement, the representation agreement provided in relevant part that:

5. The law firm is not to settle any of the client's claims without the consent of the client. The client agrees to consider seriously any recommendation of settlement that the law firm makes. The client agrees not to refuse unreasonably to settle his claims should such an opportunity arise. The client agrees not to accept any settlement which involves the waiver of the right to receive reasonable attorneys fees unless the firm agrees thereto.

13. The client agrees that the law firm shall have the right to withdraw from the case ... (a) upon the client's non-cooperation; or (b) for any other justifiable reason, including the client's failure to comply with any provisions of this agreement.... At the time of withdrawal ... the client will pay Feiger, Collison & Killmer an amount for fees and costs sufficient to equal 100% of their normal hourly rates as reflected in Exhibit A.

In his complaint in the underlying action, Jones sought damages in the amount of $5,256,952. Trial was set for October 28, 1991. In the summer of 1991, Jones and the employer intensified negotiations to settle their employment dispute. The negotiations were facilitated by a mediator. Initially, Jones and his former employer proposed settlement figures that were very far apart (Jones sought $5.2 million, the employer offered $375,000). Indeed, by the close of mediation, the employer had dropped its offer to $325,000. The course of negotiations continued and Jones counter-offered $1.475 million with the understanding, after consultation with Feiger, that if the difference was split down the middle, he was "bracketing" $900,-000 as a negotiating figure. At one point, a Feiger attorney proposed $800,000 to the employer. Although his trial testimony was somewhat confusing on this crucial point, Jones claims that he did not authorize this proposal. When the employer acceded to that amount, Jones appeared to consider it a satisfactory amount in settlement of his claims although testimony at trial was conflicting on this point. However, the day following the offer, Jones rejected the $800,000 settlement amount. Jones claimed that his rejection was premised on the employer's terms and conditions. The Feiger attorneys testified, however, that, while initially elated with the amount, the following day Jones flatly rejected the $800,000 offer as too little regardless of the terms and conditions.

On August 23, 1991, Feiger sent Jones a letter formalizing its strong recommendation that he accept the $800,000 offer and characterizing that offer as a reasonable settlement amount. The letter further reminded Jones that, under the representation agreement, he was not to "refuse unreasonably to settle [his] claims should the opportunity arise" and that his refusal to consider the $800,000 was indeed "unreasonable." *See supra* p. 1246 (quoting the relevant portions of the settlement agreement). Jones then retained another attorney, without discharging Feiger, to assist him in negotiating the settlement and with his dealings with Feiger. Meanwhile, the employer's $800,000 offer lapsed.

Subsequently, with Feiger's assistance, Jones and the employer settled for $800,000 under an agreement providing for terms and conditions which differed from the previous offer. Nevertheless, Jones refused to pay Feiger as stipulated under the representation agreement. Instead, Jones initiated this action against Feiger, contending that by proposing the $800,000 amount, Feiger effectively capped the settlement amount, forcing Jones to ultimately accept the $800,000 figure. This formed the backbone for Jones's claim that Feiger breached its fiduciary duty to him and also breached the representation agreement.

Feiger counterclaimed for legal fees due to it under the representation agreement. Jones moved for partial summary judgment, arguing that the representation agreement was void for public policy reasons because it limited his control over settlement. The trial court denied the motion, ruling that there were material issues of fact, connected to the public policy issue, which precluded summary judgment. The case went to trial and the

jury returned a verdict for Feiger, finding that Feiger did not breach the representation agreement nor breach its fiduciary duty to Jones. The jury awarded Feiger its fees as specified in the representation agreement.

On Jones's appeal after trial, the court of appeals reversed the trial court's denial of summary judgment, holding that because the denial was based on a point of law, it was a reviewable final order. The court of appeals then reached the merits of the public policy issue and found that the representation agreement violated public policy as a matter of law. Although the court of appeals vacated the judgment, it awarded Feiger payment in *quantum meruit* for services rendered to Jones and remanded to the trial court for a determination of the amount due to Feiger under that legal theory.

Feiger petitioned this court for certiorari review of the court of appeals' reversal, contending that (1) the court of appeals could not reverse a denial of a motion for summary judgment after trial, and (2) the court of appeals erred in holding that the representation agreement violated public policy. Jones cross-petitioned, arguing that the court of appeals could not award Feiger fees in *quantum meruit* once it had found that the representation agreement violated public policy.[1]

We now hold, as a threshold matter, that the court of appeals cannot entertain an appeal of the trial court's denial of summary judgment regardless of whether the denial was based on a point of law or fact. Because Jones failed to preserve his public policy argument for appeal, the court of appeals erred in addressing that issue. Thus, we do not reach the merits of the public policy issue nor Jones's cross-petition issue.

## II.

### A.

A motion for summary judgment is appropriate under C.R.C.P. 56(c) "only when the pleadings, affidavits, depositions, or admissions show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Civil Serv. Comm'n v. Pinder*, 812 P.2d 645, 649 (Colo.1991); *see also Graven v. Vail Assocs.*, 909 P.2d 514, 516 (Colo.1995) ("Summary judgment is a drastic remedy and is never warranted except on a clear showing that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.") (internal quotation marks and citations omitted). A denial of a motion for summary judgment is not a final determination on the merits and, therefore, is not an appealable interlocutory order. *Manuel v. Fort Collins Newspapers, Inc.*, 631 P.2d 1114, 1116 (Colo. 1981); *see also Glennon Heights, Inc. v. Central Bank & Trust*, 658 P.2d 872, 875 (Colo. 1983) ("a denial of a motion for summary judgment is not an appealable order when it does not otherwise put an end to the litigation"). As stated by the United States Supreme Court, a denial of summary judgment "is strictly a pretrial order that decides only one thing—that the case should go to trial." *Switzerland Cheese Ass'n v. E. Horne's Market, Inc.*, 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966) (further noting that precluding interlocutory appeals of such orders prevents piecemeal appeals).

In *Manuel*, we explained that review of a denial of a summary judgment motion is not available in the majority of jurisdictions even after a trial on the merits. 631 P.2d at 1116 (citing cases); *see also* R.F. Chase, Annotation, *Reviewability of Orders Denying Motion for Summary Judgment*, 15 A.L.R.3d 899 (1967 & Supp.1996). In joining the majority of jurisdictions precluding such review, we were persuaded by the reasoning expressed in an Arizona case, *Navajo Freight Lines v. Liberty Mutual Insurance Co.*, 12 Ariz.App. 424, 471 P.2d 309 (1970), because:

---

1. We granted certiorari to consider the following three issues:

    1. Whether the court of appeals erred in holding that the denial of a motion for summary judgment is an appealable order?

    2. Whether the court of appeals erred in holding that the petitioner's contingent fee agreement was void as against public policy?

    3. Whether the court of appeals erred by awarding quantum meruit to a law firm where it held that the law firm's contingent fee agreement was void as against public policy?

"To hold otherwise could lead to the absurd result that one who has sustained his position after a full trial and a more complete presentation of the evidence might nevertheless be reversed on appeal because he had failed to prove his case fully at the time of the hearing on the motion for summary judgment."

*Manuel*, 631 P.2d at 1117 (quoting *Navajo Freight Lines*, 471 P.2d at 313).

### B.

Here, in holding that the denial of a motion for summary judgment is an appealable order after trial, the court of appeals distinguished between motions denied on the basis of a point of law and motions denied on the basis of material facts in controversy. Based on this distinction, the court of appeals found that our decision in *Manuel* was not controlling:

> The rule announced in *Manuel* has been applied on several occasions in Colorado in refusing to address the merits of an appeal from a denial of summary judgment. However, none of those decisions appears to have involved a denial of summary judgment clearly based on a point of law, as distinct from one based on the existence of disputed facts.

*Jones*, 903 P.2d at 32 (citations omitted).

Instead, the court of appeals found that: "The logic in not reviewing a denial of summary judgment based on the existence of disputed facts—to prevent a decision based on less evidence from prevailing over one reached on more—does not apply when the denial is based on a point of law." *Id.* The court of appeals primarily relied on *Navajo Freight Lines*, cited and quoted by us in *Manuel*, in reaching this conclusion. *Jones*, 903 P.2d at 32.[2]

The court of appeals also cited four other decisions to bolster its holding. All four distinguish between the appealability of a summary judgment denial based on a point

of law and the nonappealability of a summary judgment denial based on disputed issues of material facts. *See Larsen v. Pacesetter Sys., Inc.*, 74 Haw. 1, 837 P.2d 1273, 1283 (1992) (in Hawaii "an appeal lies from a court order which resolves a motion for summary judgment as a question of law" but not on the basis of material issues of fact in dispute); *Gumm v. Combs*, 302 S.W.2d 616, 617 (Ky. 1957) (appeal of a denial of summary judgment based on law "unlike one of fact, may not be again presented or retried in the proceedings"); *Magill v. Owen Constr. Co.*, 434 So.2d 520, 521 (La.Ct.App.1983) (to hold that a denial of summary judgment based on the resolution of a legal issue cannot be appealed "could effectively deny a litigant any opportunity to have an erroneous ruling of this nature by a trial judge ever corrected"); *Payless Drug Stores Northwest v. Brown*, 300 Or. 243, 708 P.2d 1143, 1145 (1985) (holding that a denial on the basis of constitutionality of a statute can be reviewed since such a contention is not aided or defeated by evidence at trial).

Judge Ruland dissented to that part of the court's decision pertaining to the reviewability of the denial of summary judgment. While recognizing that this court has yet to address this specific issue, he nevertheless concluded that "there are sound reasons for consistent application of the rule in *Manuel.*" *Jones*, 903 P.2d at 36 (Ruland, J., concurring in part and dissenting in part). Among those reasons that he found persuasive were: (1) continuation of a clear rule for litigants to follow; (2) interpretation consistent with federal rules; and (3) preventing the nonprevailing party from casting the summary judgment ruling as one rendered on a point of law. *Id.* Judge Ruland further noted that the distinction drawn by the majority of the court of appeals would require developing a body of law separating rulings that could be appealed from rulings that could not be appealed. *Id.*

---

**2.** The language relied upon by the court of appeals from the Arizona appellate court's decision in *Navajo Freight Lines* is dicta:

> If it were abundantly clear from the trial court's order denying the motion for summary judgment that the denial was made strictly on

a point of law, and that because of such ruling the losing party thereafter was precluded from offering evidence or urging the point at the time of the trial on the merits, then there might be some logic [in permitting an appeal].

*Navajo Freight Lines*, 471 P.2d at 313.

While we acknowledge that some courts have ruled otherwise, *see* discussion *supra* p. 1248, we agree with the reasoning expressed in the dissent. The dichotomy proposed by the majority of the court of appeals panel in this case would require appellate courts to engage in a time-consuming, unworkable analysis that would lead to inconsistent results. There is simply no need for appellate courts to undertake such an analysis; the losing party is not prejudiced if the denial is not appealable because the issue can be easily preserved by other means such as a motion for directed verdict or judgment notwithstanding the verdict. *See* C.R.C.P. 50 & 59.

■ As noted by one federal appellate court, "[o]nce trial begins, summary judgment motions effectively become moot." *Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 397 (5th Cir.1995). Summary judgment is not a final decision on the merits as is generated by a verdict at the close of trial. Therefore, the appropriate means of redress for the losing movant, in a situation where the verdict is adverse to the movant, is a motion addressed to the verdict, rather than the earlier order denying summary judgment. *See Watson v. Amedco Steel, Inc.,* 29 F.3d 274, 278 (7th Cir.1994) (refusing to "step back in time to determine whether a different judgment may have been warranted on the record at summary judgment" and instead, noting that the "merits should be judged in relation to the fully-developed record emerging from [the] trial"). In our view, this holds true for denials of summary judgment regardless if based on disputed issues of fact or points of law.

This conclusion is not contrary to our recent decision in *Lakewood v. Brace,* 919 P.2d 231 (Colo.1996). In *Lakewood,* following the United States Supreme Court's mandate in *Johnson v. Jones,* —— U.S. ——, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), we carved out a limited exception to the general rule of nonappealability of denials in the context of a motion based on the jurisdictional defense of qualified immunity. Thus, in *Lakewood,* we recognized that because qualified immunity is immunity from suit, a denial of a motion for summary judgment raising the defense of qualified immunity is subject to an interlocutory appeal unless based on a finding of a genuine triable issue of material fact. Our holding in *Lakewood,* however, is not relevant here. *Lakewood* created only a narrow exception in the context of a jurisdictional defense and an appeal that would typically be taken prior to trial on the merits. And, while a fact/law distinction is pertinent in the *Lakewood* scenario, it should not be universally applicable to all denials of summary judgment motions.

The court of appeals' analysis requiring a fact/law distinction makes the unrealistic assumption that a trial court's order denying summary judgment can be categorized on that basis. Moreover, it ignores those denials that are based on mixed grounds. For example, here, Feiger contends that the court of appeals misconstrued the trial court's ruling, i.e., the ruling was premised on the basis of disputed facts rather than on a point of law. While our disposition of this case obviates the need to address Feiger's contention, we note that the trial court's order here is illustrative of the types of problems that arise in trying to ascertain the basis for a denial. The trial court ruled in relevant part as follows:

> In this case [Jones] urges that the contract of employment between [Jones] and [Feiger] is void on its face in that the contract required [Jones], [Feiger's] client at the time, to act reasonably in responding to offers of settlement. [Jones] alleges that this imposes a condition on [Jones] which is violative of public policy. Failing in the argument that the contract is void on its face for the requirement of acting reasonably, [Jones] then urges that it is void as applied in this case because the paragraph requiring reasonableness together with the paragraph allowing counsel to withdraw put undue force or pressure on [Jones] from [Feiger].
>
> Matters having to do with reasonableness are uniquely inappropriate for summary judgments. They have to do much more with interpretations of facts than with interpretations of law. The court is not satisfied that this contract on its face is void as against public policy, and the court

believes that a factual presentation is necessary.

■ We now hold that the propriety of a summary judgment denial is not appealable after a trial on the merits regardless of whether the denial is premised on a point of law or material issues of fact in controversy. This holding comports with the purpose of a summary judgment motion—to expeditiously dispose of cases that can be decided without the expense and delay associated with trial at an early stage in the litigation. This objective is no longer achievable after a full trial on the merits. *See Bigney v. Blanchard,* 430 A.2d 839, 842 (Me.1981) (once denied, "this preliminary procedural device ... has fulfilled its purpose and spent its force, and has become what is known in the law as functio officio"). Precluding appeal of a denial recognizes that summary judgment is a drastic remedy to be used only sparingly and cautiously. *See Graven,* 909 P.2d at 516. In particular, foreclosing appellate review of a trial court's determination that a trial on the merits *is* warranted underscores the principle that a summary judgment motion appropriately is granted only in the clearest of circumstances and reinforces the understanding that the trial court is best-situated to render that determination in the first instance. This position fosters judicial efficiency by sparing appellate courts from unnecessary, time-consuming piecemeal appeals. And, further, saves appellate courts the onerous task of separating summary judgment denials on factual grounds versus legal grounds. In sum, the fact/law dichotomy proposed by the court of appeals is unworkable, unreliable, and unnecessary. As aptly stated by the Fifth Circuit:

> [A]nother difficulty with such a system is distinguishing between "factual" and "legal" issues. All summary judgments are rulings of law in the sense that they may not rest on the resolution of disputed facts. We recognize this by our *de novo* standard of reviewing summary judgments. Moreover, our ability to distinguish such "factu-

al" and "legal" issues will be hampered in instances (which are by no means rare) where the district court gives no, or only very generalized, reasons for denying the motion. In any event, such a dual approach would require us to craft a new jurisprudence based on a series of dubious distinctions between law and fact. And, such an effort—added to the tasks of already overburdened courts of appeal—would benefit only those summary judgment movants who failed to properly move for judgment as a matter of law at the trial on the merits. Fed.R.Civ.P. 50. If such motions are properly made, the denied motion for summary judgment need not be reviewed, because the "legal" issues determined by the district court are freely reviewable, and the case may be reversed and rendered on that basis.

*Black v. J.I. Case Co.,* 22 F.3d 568, 571 n. 5 (5th Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 115 S.Ct. 579, 130 L.Ed.2d 494 (1994).

### C.

In so concluding, we need not determine what actions Jones was required to take in order to preserve his appeal from the denial of summary judgment.[3] Instead, we hold that in order for Jones to obtain appellate review of the public policy issue on its merits, Jones was required to preserve the issue. *See Schmidt v. Farm Credit Servs.,* 977 F.2d 511, 513 n. 3 (10th Cir.1992) ("redress [of a denial] can only be achieved through subsequent motions for judgment as a matter of law and appellate review of those motions if denied"); *Morgan v. American Univ.,* 534 A.2d 323, 327 (D.C.App.1987) ("In a properly litigated case, when it appears during the course of trial that factual issues are indeed not in dispute and are not jury questions, the party denied summary judgment can move for a directed verdict or a [judgment notwithstanding the verdict] at the appropriate time .... Denial of these motions are of course

---

**3.** The court of appeals held that in order for it to review the denial, Jones need not have made a motion for judgment as a matter of law:

> [T]o avoid creating an unnecessary pitfall for the unwary and, in doing so, frustrating the

efficient administration of justice, we conclude that no such duplication of time, effort, and expense should be required.

*Jones,* 903 P.2d at 33.

appealable after an adverse jury verdict."); *Bigney*, 430 A.2d at 842 ("Failure to renew the motion at the close of all the evidence operates as a waiver of the prior [summary judgment] motion and precludes appellate review.").

The Supreme Court of Wyoming recently considered this very issue in *Cargill, Inc. v. Mountain Cement Co.*, 891 P.2d 57 (Wyo. 1995). In *Cargill*, the court explained that, in the context of the two-pronged summary judgment analysis:

> When the "issue of material fact" prong of summary judgment analysis is removed, the only question that remains is whether the moving party is entitled to judgment as a matter of law. The proper procedural mechanism for challenging an adverse judgment, following a trial on the merits, is a motion for judgment as a matter of law. We hold that it is improper to review the denial of a motion for summary judgment following a trial on the merits.

*Cargill*, 891 P.2d at 61.

■ In order to preserve the public policy issue for appeal, Jones had to make a motion for a directed verdict or for judgment notwithstanding the verdict. Jones failed to take either action. Nor did Jones rely on public policy as a defense to the enforceability of the representation agreement at trial.[4] In all, Jones seemingly abandoned the argument after the summary judgment motion was denied. This abandonment operated as a waiver and the issue cannot be reviewed on appeal. To hold otherwise would work an injustice because, by Jones's inaction, Feiger was prevented from developing a record on the issue.

While Jones all but concedes that he did not properly preserve the public policy argument for appellate review, he asserts that whether a contract violates public policy is not an issue that can be waived for appeal by procedural deficiency. Jones takes the position that this court should *sua sponte* determine whether or not the representation agreement is void for public policy reasons. In support, Jones cites three Colorado cases, *Elliott v. Joyce*, 889 P.2d 43 (Colo.1994); *Metropolitan Life Insurance Co. v. Roma*, 97 Colo. 493, 50 P.2d 1142 (1935); and *Russell v. Courier Printing & Publishing Co.*, 43 Colo. 321, 95 P. 936 (1908). We do not agree with Jones that these cases compel us to review the representation agreement for a possible public policy violation under circumstances where that issue has not been preserved for appellate review.

In *Elliott*, the trial court ruled that if a contingency fee agreement is abandoned by the parties, an attorney can recover on an implied contract. The court of appeals reversed, holding that if an attorney voluntarily withdraws, the client has no obligation to pay the attorney unless there is a contractual provision creating the obligation or an independent agreement to do so. We granted certiorari to consider whether rules govern-

4. Jones argues that the trial court sent out inconsistent signals on how it characterized its summary judgment ruling and its effect on the parties at trial. In particular, Jones points to the following oral ruling made by the trial court when the parties sought assistance regarding the scope of evidence that could be presented on the public policy issue:

> I have determined that this form of representation agreement is not void as against either [C.R.C.P. Ch.] 23.3 [Rules Governing Contingency Fee Agreements] or public policy. Therefore, as a matter of law, that's not an issue in the case for the jury. An issue before the jury is a question of breach of fiduciary duty on the part of the law firm. And that question, if it touches upon the form of representation agreement, I will allow it. I won't allow questions as to the determination of law that the Court has made up to this point. I see them as being two different issues. Close but

different. One that the Court has ruled on. One that is a part of fiduciary claim in this case. Factually for the jury.

We are not convinced that this statement is inconsistent with the trial court's earlier ruling finding that there were outstanding questions of fact as to reasonableness that prevented it from granting summary judgment on the public policy issue. *See supra* pp. 1249–1250 (quoting the relevant portions of the trial court's ruling on Jones's motion for partial summary judgment). Even if it was, arguably, a confusing statement, Jones's counsel did not seek clarification from the trial court and did not ask any questions. In fact, Jones's counsel appeared to agree with the statement and only Feiger's counsel probed further. However, regardless of any possible confusion, Jones was not thereby precluded from making a motion for a directed verdict, or, after the jury verdict, a motion for judgment notwithstanding the verdict.

ing contingency agreements prohibit recovery in *quantum meruit* where the parties to a contingency fee agreement have abandoned that agreement. In setting out the procedural history of the case, we noted that the record did not reflect whether Rule 5(d) or Rule 6 of C.R.C.P. Ch. 23.3 (Rules Governing Contingency Fee Agreements) had been raised by the parties before the trial court, and we assumed that they had not been. 889 P.2d at 44–45. *Elliott* sheds no light on the question before us. In *Elliott,* the court of appeals considered these two rules and the parties did not challenge its jurisdiction to do so. Moreover, in its opinion, the court of appeals noted that it did not have the evidentiary record before it. *Joyce v. Elliott,* 857 P.2d 549, 551 (Colo.App.1993), *aff'd,* 889 P.2d 43 (Colo.1994). Based on these two factors, we conclude that our statement in *Elliott* addressed the lack of the record and bears no significance here. Thus, nothing in *Elliott* expressly or implicitly suggests that we must review the representation agreement for public policy violations when that issue was not preserved by Jones for appellate review.

In both *Metropolitan* and *Russell,* this court had before it blatant examples of contracts serving an illegal purpose. In *Metropolitan,* the life insurance contract at issue sought to indemnify the insurer for loss of life or property resulting from intentional and deliberate lawlessness (the insured was a known leader of an underworld gang). Thus, this court concluded that:

> All attempts to enforce contracts for the violation of law, or for the protection of those who propose to violate law, or for the indemnification of those injured by deliberately and intentionally violating the law, strike at the very heart of the state and its courts will not wait supinely for the parties to raise the question, but will take cognizance of it whenever and however it appears and act, or refuse to act, as the welfare of the state demands.

*Metropolitan,* 97 Colo. at 497, 50 P.2d at 1144.

In *Russell,* this court held that the contract before it had a "tendency" which was "evil" because it tempted one of the parties to resort to improper means in fulfilling its contractual obligations. Although *Russell* did not arise in the context of preservation of an issue for appellate review, Jones quotes from the following language in that decision to support his contention that a contract is voidable for public policy reasons for the good of the public rather than merely at the behest of one of the contracting parties:

> It does not sound well for a defendant to say that a contract which he deliberately entered into, and of which he has had the benefit, is void because [it is] contrary to public policy; but it is not for his sake, or for his protection, that the objection is allowed, but for the protection of the public, by thus preventing this character of contracts being made, and avoiding evils which naturally result therefrom.

*Russell,* 43 Colo. at 325–26, 95 P. at 938.

While we agree that this court does have *sua sponte* power to review a contract for violation of public policy for the good of the public,[5] the representation agreement before us here does not raise the specter of illegality that so concerned this court in *Metropolitan* and *Russell.* Moreover, without ruling on the merits of the legal issue itself, we note that, in contrast to the contracts in those two cases, the representation agreement between Feiger and Jones does not facially reflect a clear-cut public policy violation.[6] We further note

---

**5.** *See* Restatement (Second) of Contracts, Ch. 8, Topic 1 (Introduction) at 5 (1979) ("Even if neither party's pleading or proof reveals the [public policy] contravention, the court may ordinarily inquire into it and decide the case on the basis of it if it finds it just to do so, subject to any relevant rules of pleading or proof by which it is bound.").

**6.** Thus, *Phillips v. Phillips,* 820 S.W.2d 785 (Tex. 1991), also cited by Jones, is distinguishable. In *Phillips,* the Texas Supreme Court explained that

pleading an agreement that is illegal on its face anticipates the defense and that a plainly illegal contract will not be enforced even if the parties thereto do not object. 820 S.W.2d at 789. The court then held that because the plaintiff's own pleadings established the defense (the plaintiff sought damages under the contract that constituted an illegal penalty), the defendant did not have to affirmatively plead penalty as a defense. *Id.* at 790. The court characterized the ruling as a narrow exception to the general requirement that affirmative defenses have to be pled. *Id.*

that Jones, a sophisticated business person, was actively involved in negotiating the terms of the representation agreement. Therefore, Jones is not an example of a party requiring the protection of the court. Jones was, or, at least, should have been, well aware of the implications of the representation agreement. Thus, we decline Jones's invitation to review the representation agreement for public policy violations. *See F.D.I.C. v. Kansas Bankers Surety Co.,* 963 F.2d 289, 293 (10th Cir.1992) (refusing to invoke its *sua sponte* power to review contracts for a public policy violation); *see also Public Serv. Co. v. Continental Casualty Co.,* 26 F.3d 1508, 1516 n. 4 (10th Cir.1994) (citing Tenth Circuit cases refusing to consider public policy arguments injected on appeal that were not previously raised before the trial court).

### III.

For the foregoing reasons, we reverse the judgment of the court of appeals and remand the case to that court for return to the trial court with instructions to reinstate the jury verdict in Feiger's favor.

