25CA1119 Peo in Interest of ZJ 01-22-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1119
Gunnison County District Court No. 23JV30000
Honorable Kellie L. Starritt, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of Z.J., a Child,

and Concerning D.R.S.,

Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE BROWN
Freyre and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 22, 2026

---

Matthew R. Hoyt, County Attorney, Sammy Obaid, Assistant County Attorney, Gunnison, Colorado, for Appellee

Robert G. Tweedell, Guardian Ad Litem

James West, Office of Respondent Parents' Counsel, Longmont, Colorado, for Appellant

¶ 1    In this dependency and neglect action, D.R.S. (father) appeals the judgment terminating his parent-child legal relationship with Z.J. (the child).  Father contends that (1) the juvenile court erred by ruling on a motion to terminate his parental rights that the Department filed more than a year before; (2) the court erred by finding that his treatment plan was appropriate; and (3) the evidence was not sufficient to support the court's fitness and reasonable efforts findings.  Father also asserts a largely undeveloped claim of ineffective assistance of counsel.  We conclude that any error by the court was harmless and that father failed to sufficiently allege an ineffective assistance claim and therefore affirm the judgment.

## I.    Background

¶ 2    In January 2023, the Gunnison County Department of Health and Human Services (the Department) filed a petition in dependency and neglect, raising concerns that the then-newborn child was born affected by substances.  Both parents entered admissions, and the juvenile court adjudicated the child dependent and neglected and adopted treatment plans for the parents.

1

¶ 3     In February 2024, the Department moved to terminate both parent's parental rights, asserting that the child had been adjudicated, the parents had not reasonably complied with appropriate treatment plans, the parents were unfit, and their conditions were unlikely to change within a reasonable time.  *See* § 19-3-604(1)(c), C.R.S. 2025 (providing the statutory criteria for termination of parental rights).  The Department then moved for, and the court granted, summary judgment on the termination motions.  Both parents appealed.

¶ 4     In January 2025, a division of this court reversed the order granting summary judgment and remanded the case for further proceedings.  *See People in Interest of Z.J.*, (Colo. App. No. 24CA0815, Jan. 9, 2025) (not published pursuant to C.A.R. 35(e)).  Later that month, the juvenile court set a hearing on the Department's original termination motion.  In May 2025, following a two-day contested hearing, the juvenile court terminated father's parental rights.[1]

---

[1] After the reversal but before the termination hearing, mother stipulated to the termination of her parental rights; she does not participate in this appeal.

## II. The Department's Failure to File a New Termination Motion

¶ 5     As a preliminary matter, father contends that the juvenile court erred by failing to require the Department to file a new termination motion and instead ruling on the original termination motion.  We perceive no reversible error.

¶ 6     The juvenile court may consider a termination of parental rights "only after the filing of a written motion alleging the factual grounds for termination."  § 19-3-602(1), C.R.S. 2025.  In cases subject to expedited permanency planning like this one, "the court shall hear the motion for termination within one hundred twenty days after such motion is filed, and shall not grant a delay unless" it finds both good cause and that the delay is in the child's best interests.  *Id.*

¶ 7     Here, the Department moved for termination in January 2024 and did not file a new motion after summary judgment was reversed and the matter was remanded.  The juvenile court heard the motion in April 2025.

¶ 8     Father concedes that he did not preserve this issue but urges us to review his claim under what some divisions of this court have called the "miscarriage of justice" exception to the preservation rule.

3

The miscarriage of justice exception has a high bar and narrow scope. *People in Interest of M.B.*, 2020 COA 13, ¶¶ 23-24. We have recognized the exception in "rare cases, involving unusual or special circumstances, . . . to prevent an unequivocal and manifest injustice." *People in Interest of E.R.S.*, 2019 COA 40, ¶ 38.

¶ 9 We need not determine whether father's circumstances meet such an exacting test because, even if we were to determine that the court erred by ruling on the original motion, the error was harmless. *See L&R Expl. Venture v. Grynberg*, 271 P.3d 530, 536 (Colo. App. 2011) (declining to resolve an issue where outcome would not change). We reach this conclusion for four reasons.

¶ 10 First, holding the termination hearing outside of the one-hundred-twenty-day period under section 19-3-602(1) did not divest the juvenile court of jurisdiction. *See People in Interest of N.D.V.*, 224 P.3d 410, 414 (Colo. App. 2009) (failure to follow the statute is an error but does not affect jurisdiction).

¶ 11 Second, the February 2024 termination motion did not allege specific facts supporting the asserted statutory grounds for termination under sections 19-3-604(1)(c) and (2). So it is not as though the motion the court heard in April 2025 included stale

facts. Father does not claim that the statutory criteria had changed or no longer applied when the motion was heard. And while the better practice would be for the Department to allege specific facts supporting the statutory criteria cited in the termination motion, we are not aware of, and father does not provide citation to, any legal requirement for the Department to do so.

¶ 12    Third, we are not persuaded by father's claim that he lacked appropriate notice absent the filing of a new motion. To the extent father argues he lacked notice of the termination hearing, the record belies the argument. Less than a week after the division issued its opinion reversing summary judgment, father's counsel appeared at a hearing before the juvenile court at which setting the termination hearing was discussed. Both father and his counsel appeared ten days later when the hearing was set. And the court issued a trial management order that included the dates and times of the hearing.

¶ 13    To the extent father contends that he did not have notice of what *issues* would be addressed at the termination hearing, we are not persuaded. During closing arguments, father's counsel made clear that father was not contesting the statutory criteria listed in

the original January 2024 termination motion — that he had not reasonably complied with the treatment plan, attended family time with the child, or remedied the problems addressed in the treatment plan, and that he was unfit and unlikely to become fit in a reasonable period of time — but rather was objecting to termination on the grounds that the Department had not made reasonable efforts. And the juvenile court terminated father's parental rights based on the previously identified statutory criteria, not based on different criteria such as abandonment or the inability to craft an appropriate treatment plan to address the parent's unfitness. *Compare* § 19-3-604(2)(c), *with* § 19-3-604(2)(a), (b).

¶ 14     Finally, to the extent father claims that a new termination motion was required because the summary judgment reversal effectively constituted a denial of the original termination motion, we disagree. Father provides no support for this assertion. And it is well established that "a denial of summary judgment 'is strictly a pretrial order that decides only one thing — that the case should go to trial.'" *Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244, 1247 (Colo. 1996) (citation omitted).

¶ 15    We conclude that, even if the juvenile court erred by not requiring the Department to file a new termination motion, the error was harmless and therefore does not warrant reversal.

### III.    Appropriate Treatment Plan

¶ 16    Father contends that his treatment plan was not appropriate. Father concedes this issue was not preserved but urges us to nevertheless review it because the juvenile court made a clear ruling at the termination hearing that his treatment plan was appropriate. We need not decide if this is sufficient to preserve the issue because, regardless, the outcome is the same. *See L&R Expl. Venture*, 271 P.3d at 536. We see no error.

### A.    Relevant Law

¶ 17    The purpose of a treatment plan is to preserve the parent-child legal relationship by assisting the parent in overcoming the problems that required intervention into the family. *People in Interest of L.M.*, 2018 COA 57M, ¶ 25. Therefore, an appropriate treatment plan is one that is approved by the court, relates to the child's needs, and provides treatment objectives that are reasonably calculated to render the parent fit to provide adequate parenting to

the child within a reasonable time. § 19-1-103(12), C.R.S. 2025; *People in Interest of K.B.*, 2016 COA 21, ¶ 13.

¶ 18 We measure the appropriateness of a treatment plan by its likelihood of success in reuniting the family, which we assess in light of the facts existing at the time the juvenile court approved the plan. *People in Interest of B.C.*, 122 P.3d 1067, 1071 (Colo. App. 2005). The fact that a treatment plan is not ultimately successful does not mean that it was inappropriate when the court approved it. *People in Interest of M.M.*, 726 P.2d 1108, 1121 (Colo. 1986).

## B.   Analysis

¶ 19 The juvenile court found that, while there were "a lot of boilerplate treatment plan components" in father's treatment plan, "the fundamental treatment plan components [we]re really geared towards assisting [father] in becoming a fit parent and promoting reunification." The record supports this finding. When the treatment plan was adopted, the child was a high-needs infant who had never been in father's care. Father had a history of criminal involvement and substance dependence that would endanger the child if continued. Father's treatment plan included objectives that required father to (1) meet the child's physical, medical, and

educational needs; (2) demonstrate a lifestyle free from all controlled substance and alcohol use; (3) refrain from criminal activity; and (4) develop the skills necessary to safely and independently parent the child.

¶ 20 These objectives remained appropriate throughout the case. At the termination hearing, father testified that, although he was sober during his incarceration, there were times he relapsed during the case. Father admitted that there were long stretches when he did not participate in family time with the child. The caseworker's uncontested testimony was that, while there were times when father participated in his treatment plan, father had not yet demonstrated an ability to independently parent the child or meet her needs. The caseworker testified that whatever progress father made early in the case "ha[d] regressed" and that the treatment plan objectives still remained necessary for reunification.

¶ 21 Father claims that his pending sentence to community corrections at the time of the termination hearing rendered the treatment plan no longer appropriate "almost by definition." We recognize that it can be difficult to secure particular services for parents while they are incarcerated. However, father's minimal

treatment plan did not require participation in any specialized services.  Furthermore, there was no evidence before the juvenile court suggesting that either father's time spent in custody or his pending community corrections sentence was a barrier to completing his treatment plan.  Instead, father testified that other factors were to blame for his inability to complete the treatment plan, including his difficulties with transportation and the child's status in the Department's temporary custody.  Thus, we conclude that the juvenile court did not err by finding that father's treatment plan was appropriate.

¶ 22    To the extent father contends that he received ineffective assistance of counsel because his attorney did not request a new treatment plan after remand, we disagree.  Father appears to claim that his counsel's assistance was deficient because his sentence to community corrections was "a change of circumstances that required a review of the treatment plan."  *See A.R. v. D.R.*, 2020 CO 10, ¶¶ 48, 60 (to prevail on a claim of ineffective assistance of counsel, a parent must show that counsel's representation was outside the wide range of professionally competent assistance and that the deficient representation was prejudicial).  But father does

not provide any authority, and we are aware of none, that suggests a treatment plan *must* be amended when a parent's in-custody status changes. Furthermore, because father had not yet been accepted into any community corrections program, it was unclear even at the termination hearing what kind of programming might — or might not — be available for him once he was transferred. Given these circumstances, father does not allege facts with sufficient specificity to be successful on an ineffective assistance claim. *See People in Interest of C.H.*, 166 P.3d 288, 291 (Colo. App. 2007).

IV.    Father's Status After the Remand

¶ 23    Father contends that the juvenile court erred by basing its fitness and reasonable efforts findings solely on evidence of what occurred before the remand. We disagree.

A.    Standard of Review

¶ 24    Father presents his claims pertaining to the fitness and reasonable efforts findings as a sufficiency of the evidence claim, and urges us to review the claims de novo as prescribed in *McCoy v. People*, 2019 CO 44, ¶ 22. But father's reliance on *McCoy*, a criminal case, is misplaced. Dependency and neglect actions are civil in nature, and it is well established that, "at a termination

11

hearing, . . . the sufficiency . . . of the evidence[] and the inferences and conclusions to be drawn" from that evidence "are within the discretion of the juvenile court, and we will not disturb these conclusions unless they are so clearly erroneous as to find no support in the record." *People in Interest of S.N-V.*, 300 P.3d 911, 912 (Colo. App. 2011); *see also People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008) ("A trial court's findings and conclusions as to unfitness will not be disturbed on review if the record supports them."). We therefore review father's sufficiency claim for clear error.

## B. Relevant Law

¶ 25 An unfit parent is one whose conduct or condition renders them "unable or unwilling to give the child reasonable parental care to include, at a minimum, nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions." § 19-3-604(2). In determining whether a parent's conduct or condition is likely to change within a reasonable time, "the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition." *People in*

*Interest of S.Z.S.*, 2022 COA 133, ¶ 24.  A parent's noncompliance with a treatment plan generally "demonstrates a lack of commitment to meeting the child's needs and, therefore, may also be considered in determining unfitness."  *D.P.*, 181 P.3d at 408.  In determining unfitness, the court shall also consider the statutorily prescribed factors, including as relevant here the parent's past involvement with a department of human services or the juvenile court, the parent's use of illegal substances, and a department's provision of reasonable efforts.  § 19-3-604(2)(h)-(l).

## C.    Analysis

¶ 26    The juvenile court found, with record support, that father was not fit and not likely to become fit within a reasonable period of time.  As part of its fitness finding, the court considered the following:

- the adjudication of and termination of parental rights as to father's older children, *see* § 19-3-604(2)(l) and (m);

- father's excessive use of controlled substances, *see* § 19-3-604(2)(e);

- the Department's reasonable efforts, *see* § 19-3-604(2)(h);

13

- father's failure, without cause, to participate in family time with the child, *see* § 19-3-604(1)(c)(I)(A); and

- father's non-compliance with the treatment plan.

¶ 27 Father claims that the juvenile court made its fitness findings "without any appreciable testimony as to [f]ather's current condition." But the record belies this claim. In its judgment terminating parental rights, the court considered the "two years and four or five months" that made up "the entirety of this case." The court noted that, during that time, father "had periods of success and then relapse," and it specifically noted father's testimony about an inpatient substance recovery program he recently attended.

¶ 28 Furthermore, the record contains ample additional evidence of father's condition and lack of engagement after the remand. *See In re Marriage of Collins*, 2023 COA 116M, ¶ 21 (we presume that the court considered all the evidence presented). The caseworker testified extensively about his unsuccessful efforts to reengage father and provide family time after the remand. The Department provided uncontested evidence that, although family time was made available to father three times a week for the four months between

14

the remand and the termination hearing, father attended only five of the available family time sessions.

¶ 29    The caseworker testified that, at the time of the termination hearing, father was still at "a very initial step" of being able to provide care for the child and that father's inconsistency in attending family time negatively affected the child and her ability to recognize father or form a bond with him.  The caseworker also testified that his post-remand correspondence with father demonstrated "deflection and . . . a scary lack of accountability" about father's lack of progress in becoming fit to parent the child.  This evidence is sufficient to support the court's findings both that the Department made reasonable efforts and that father remained unfit at the time of the termination hearing.

¶ 30    While we agree that it may have been helpful for the juvenile court to separately consider the Department's reasonable efforts after remand, father did not ask the court to do so.  *See Forgette v. People*, 2023 CO 4, ¶ 21 (to preserve an issue for appellate review, a party must alert the court to the issue so that the court has an adequate opportunity to make findings of fact and conclusions of law).  Instead, the majority of father's testimony and argument at

trial was focused on his concerns about the Department's efforts made in 2023 and 2024, before the motion for summary judgment was granted. Still, because the court considered the Department's post-remand efforts and father's post-remand fitness, we reject father's single-sentence argument that his counsel was ineffective for not moving for a finding that the Department failed to provide reasonable efforts or objecting to the Department's failure to investigate father's current fitness. *See A.R.*, ¶¶ 48, 60; *C.H.*, 166 P.3d at 291.

¶ 31 Under these circumstances, the record supports the court's finding that father was unfit, including its finding that the Department provided reasonable efforts.

## V. Disposition

¶ 32 The judgment is affirmed.

JUDGE FREYRE and JUDGE SCHUTZ concur.